FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO
APR 2 2 2019
MITCHELL R. ELFERS
CLERK OF COURT
9:20 am

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.    Crim. No. 18-2041 KG

FRANCISCO YBARRA CRUZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant's Motion for Judgment of Acquittal or, in the Alternative, for New Trial (Motion), filed March 25, 2019, and Defendant's request for an evidentiary hearing. (Doc. 101). On April 8, 2019, the United States filed its response. (Doc. 102). Having considered the Motion, the response, and relevant portions of the trial transcript, the Court denies Defendant's request for an evidentiary hearing and denies the Motion.

As an initial matter, the Court determines that an evidentiary hearing on the Motion would not be helpful to the Court. Citations to the trial transcript and references to admitted trial exhibits are sufficient for the Court to decide the Motion. Accordingly, the Court denies Defendant's request for an evidentiary hearing.

*A. Motion for Judgment of Acquittal: Fed. R. Crim. P. 29(c)*

Defendant moves first for a judgment of acquittal under Rule 29(c). Defendant urges the Court to grant his Rule 29(c) motion because of lack of sufficient evidence to sustain the Count 2 conviction, possession with intent to distribute 500 grams and more of methamphetamine.[1] *See* (Doc. 94).

---

[1] The jury did not find Defendant guilty of Count 1, conspiracy to possess with intent to distribute 500 grams and more of methamphetamine. (Doc. 94).

Rule 29(c) requires the Court to "view[] all evidence and draw[] all reasonable inferences in the light most favorable to the government." *United States v. Oliver,* 278 F.3d 1035, 1043 (10th Cir.2001). Under this standard, the Court "will not reverse a conviction ... unless no rational trier of fact could have reached the disputed verdict." *United States v. Wilson,* 182 F.3d 737, 742 (10th Cir.1999). In other words,

> [t]he evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt. Instead, the evidence only has to reasonably support the jury's finding of guilt beyond a reasonable doubt.

*Id.* To make a Rule 29(c) determination, the Court does not weigh conflicting evidence or consider the credibility of witnesses. *United States v. White,* 673 F.2d 299, 302 (10th Cir. 1982). If after viewing the evidence in the light most favorable to the United States, the Court finds "an equal or nearly equal theory of guilt and a theory of innocence," the Court "must reverse the conviction." *United States v. Flores-Rivera,* 56 F.3d 319, 323 (1st Cir. 1995).

Defendant argues that he "proved by a preponderance of the evidence that he reasonably believed he was acting as a government agent and no reasonable jury could find, beyond a reasonable doubt, that the defendant did not reasonably believe he was an authorized government agent." (Doc. 101) at 7. "In a case involving a public authority defense, [courts] will uphold the jury verdict if a rational juror could find, beyond a reasonable doubt, that the defendant did not reasonably believe he was acting as an authorized agent of the Government." *United States v. Ortega,* 210 F. App'x 784, 786 (10th Cir. 2006).

It is undisputed that before March 14, 2018, Defendant had been working as an authorized confidential informant (CI). The issue under Rule 29(c) is whether a rational jury could find, beyond a reasonable doubt, that Defendant did not reasonably believe he was acting as a CI on March 24, 2018, the date of his arrest.

Prior to March 14, 2018, Defendant showed Homeland Security and Investigations (HSI) Special Agents Eduardo Arellano and Manuel Ochoa (collectively, the Agents) paperwork indicating that he had been charged in Apache County, Arizona, on drug possession and drug paraphernalia possession charges. (Doc. 98) at 272. Defendant told the Agents that a police officer found methamphetamine in his vehicle and that the methamphetamine did not belong to him. *Id.* Contrary to Defendant's statement, a police report on the incident noted that the police officer found methamphetamine in Defendant's pocket and that a glass pipe fell from Defendant's pant leg. *Id.* at 273; (Doc. 99) at 51.

The police report concerned the Agents because it showed that Defendant was using narcotics, conducting illegal acts, and not "being totally truthful." (Doc. 98) at 273-74. Having notified their group supervisor of the Apache County situation, the group supervisor and the Agents agreed to deactivate Defendant as a CI. (Doc. 98) at 274.

On March 14, 2018, the Agents and Defendant met outside of the Agents' office building. (Doc. 98) at 275; (Doc. 100) at 36. The Agents told Defendant, in Spanish, that he was deactivated as a CI because of the Apache County incident and that he was "no longer working with HSI." (Doc. 98) at 275; (Doc. 99) at 65-66. The Agents told Defendant to stop working cases and to "cut ties with the targets." *Id.* at 276; (Doc. 99) at 75. Agent Ochoa told Defendant that "if you get caught doing something illegal, then you're on your own." (Doc. 99) at 66. The Agents also told Defendant that if he took care of the Apache County situation, he could possibly be reactivated. (Doc. 98) at 279; (Doc. 99) at 75-76. According to the Agents, Defendant appeared to understand what they told him. (Doc. 98) at 275; (Doc. 99) at 66. In fact, Defendant appeared "sad" and "nervous" at this news. (Doc. 99) at 66.

Defendant testified that he understood that the Agents "said we're going to stop working" and that "to keep working" Defendant would have to take care of the Apache County situation.

3

*Id.* at 190, 194-95. Contrary to the testimony of the Agents, Defendant testified that Agent Arellano told him to "[c]ontinue gathering information." *Id.* at 195.

The Agents and the group supervisor subsequently signed a document memorializing Defendant's deactivation on March 14, 2018. (Doc. 98) at 277, Ex. 5. Defendant's Source Chronology Sheet also documented the March 14, 2018, deactivation. *Id.* at 277-78; Ex. 4.

Defendant ceased communications with the Agents after March 14, 2018. (Doc. 98) at 280; (Doc. 100) at 37; Ex. 20. Defendant testified that after March 14, 2018, he did not need to text message the Agents. (Doc. 100) at 37. Defendant, however, communicated with drug traffickers after March 14, 2018. *Id.*

Neither Agent Arellano nor Agent Ochoa authorized Defendant to transport 10 pounds of methamphetamine from Phoenix, Arizona, to Las Cruces, New Mexico, the basis for Defendant's March 24, 2018, arrest. (Doc. 98) at 280; (Doc. 99) at 66-67. Notably, the only time any agent authorized Defendant to transport drugs, agents closely monitored the transportation and delivery of the drugs, which included a single packet of methamphetamine and several sham packets of methamphetamine. (Doc. 99) at 55-60, 64, and 175.

On March 24, 2018, New Mexico State Police Officer Leo Palomares executed a traffic stop of Defendant north of Las Cruces, which lasted three hours, and resulted in a seizure of 10 pounds of methamphetamine. (Doc. 98) at 231. Defendant did not mention that he was transporting methamphetamine for federal agents or otherwise working for federal agents. *Id.* at 231-48. Defendant also denied several times he had drugs and gave a contradictory account of his travel plans. *Id.* at 232-42. Defendant appeared nervous to Officer Palomares as well. *Id.* at 231. Unlike the previous controlled delivery of methamphetamine, no agents monitored the transportation of the methamphetamine nor did agents place a sham packet of methamphetamine along with a smaller amount of methamphetamine.

Viewing the above evidence and drawing all reasonable inferences in the light most favorable to the United States, the Court finds that the evidence shows that the Agents had a legitimate reason for deactivating Defendant on March 14, 2018. Defendant also knew on March 14, 2018, that he was no longer working as a CI and could not return to his work as a CI until he cleared up the Apache County situation. Moreover, Defendant's actions after March 14, 2018, are consistent with a deactivation: Defendant did not clear up the Apache County situation; Defendant did not communicate with the Agents after March 14, 2018; Defendant did not receive authorization to perform a controlled drug delivery on March 24, 2018; the March 24, 2018, transportation of the methamphetamine did not mirror the previous controlled drug delivery; and Defendant did not inform Officer Palomares that he was a CI or federal agent despite ample opportunity to do so. The Court determines that a rational juror could find, beyond a reasonable doubt, that Defendant did not reasonably believe he was acting as a CI on March 24, 2018. Moreover, Defendant does not otherwise contest the fact that on March 24, 2018, he was transporting 10 pounds of methamphetamine. Consequently, substantial evidence supports the Count 2 conviction and Defendant's Rule 29(c) motion for a judgment of acquittal fails.

*B. Motion for New Trial: Fed. R. Crim. P. 33(a)*

In the alternative, Defendant moves under Rule 33(a) for a new trial because the jury misunderstood how to apply the authorized government agent defense and the Court did not *sua sponte* instruct the jury on a duress defense. Rule 33(a) provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." "In deciding a motion for new trial, the court may weigh the evidence and consider the credibility of witnesses in determining whether the verdict is contrary to the weight of the evidence such that a miscarriage

of justice may have occurred." *United States v. Evans*, 42 F.3d 586, 593 (10th Cir. 1994) (citation omitted). Put another way, "the power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *Id.* (citation omitted). Furthermore, "[a] motion for a new trial is not viewed with favor and should be granted with great caution." *United States v. Chatman*, 994 F.2d 1510, 1518 (10th Cir. 1993).

Defendant argues first that three questions the jury submitted to the Court, questions the jury later withdrew, indicate that the jury "may not have understood that, if they found that Mr. Cruz reasonably believed he was acting pursuant to governmental authority, he must be found not guilty of both counts" 1 and 2. (Doc. 101) at 10; (Doc. 100) at 142-44. Jury Instruction No. 11, however, clearly states that

> If you find that the Defendant has proved that he reasonably believed that he was acting as an authorized government agent as provided in this instruction, you must find the Defendant not guilty of the charges in Counts 1 and 2 of the Indictment.

(Doc. 90) at 13. This argument for a new trial lacks merit.

Next, Defendant refers to a fourth question by the jury, a question the jury also withdrew, which asked for the legal definition of voluntary. Defendant argues that this question shows that the jury was concerned about whether Defendant acted voluntarily or whether he acted under duress. Defendant, therefore, asserts that the Court should have *sua sponte* instructed the jury on the affirmative defense of duress. The duress defense jury instruction states, in pertinent part,:

> If you find that the defendant committed the crime as charged, his actions are justified by duress or coercion only if you find that he has proven the following three elements:
>
> 1. the defendant was under an unlawful and present, imminent and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury to himself [or a family member, or others];
>
> 2. the defendant had no reasonable, legal alternative to violating the law, that he had no chance both to refuse to do the criminal act and also to avoid the threatened harm;

3. a direct causal relationship could have been reasonably anticipated between engaging in the criminal action and avoiding the threatened harm.

The defendant must prove these elements by a preponderance of the evidence. Tenth Cir. Crim. Pattern Jury Instruction No. 1.36 (updated Feb. 2018).

"As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). A defendant is entitled to a duress defense if the defendant "produce[s] sufficient evidence that would permit the jury to find in [the defendant's] favor by a preponderance on each element of the defense." *United States v. Dixon*, 901 F.3d 1170, 1177 (10th Cir. 2018).

Defendant contends that the evidence admitted at trial shows that Defendant "had an unlawful and present, imminent and impending fear of death or serious bodily injury." (Doc. 101) at 11. While there is evidence that Defendant generally feared the drug traffickers he encountered, that generalized fear is not sufficient evidence from which a reasonable jury could find by a preponderance of the evidence that Defendant was under a "present, imminent and impending threat" of death, specifically, or a specific serious bodily injury. *See, e.g., United States v. Vasquez*, 540 F. App'x 623, 626 (9th Cir. 2013) (noting that "'veiled threat of future unspecified harm' is not enough" for duress defense (citation omitted)); *United States v. Villegas*, 899 F.2d 1324, 1344 (2d Cir.1990) (noting that "[e]vidence of a mere 'generalized fear' does not satisfy the requirement of a well-founded fear of impending death or serious bodily harm" for duress defense). Defendant fails, therefore, to show he meets the first element of a duress defense.

Even if Defendant meets that first duress defense element, he must show he had "no reasonable, legal alternative to violating the law...." Tenth Cir. Crim. Pattern Jury Instruction No. 1.36. To meet this element, a defendant must provide evidence from which a reasonable

7

jury could find by a preponderance of the evidence that "all reasonable alternatives [were] foreclosed." *Dixon*, 901 F.3d at 1179 (citation omitted). "The ability to contact law enforcement will generally constitute a reasonable alternative to illegal activity." *Id.* (citation omitted). "[M]ere allegations that 'police would have been ineffective or unwilling to protect [the defendant] . . . fall well short of satisfying a defendant's burden." *Id.* (citation omitted).

Here, Defendant argues that he reported his concerns and fears to the Agents, but they did not give him "any advice or protection." (Doc. 101) at 12. Thus, according to Defendant, "he did not have a reasonable alternative to complying with the traffickers [sic] demands." *Id.* Contrary to Defendant's argument, the Agents advised Defendant to "cut ties" with the drug traffickers when they deactivated him. Even assuming that advice was unhelpful, Defendant does not offer evidence that other alternatives were unavailable to him. *See Dixon*, 901 F.3d at 1180 (finding defendant "offered no evidence that *other* alternatives were unavailable to her."). For instance, Defendant does not explain why he did not later communicate with the Agents or other law enforcement officials about feeling under duress to transport 10 pounds of methamphetamine from Phoenix to Las Cruces. Defendant simply does not show that a reasonable jury could find by a preponderance of the evidence that "all reasonable alternatives [were] foreclosed." *Id.* (citation omitted).

In sum, Defendant has failed to provide evidence from which a reasonable jury could find by a preponderance of the evidence that he was entitled to a duress defense. Furthermore, the Court notes that defense counsel did not raise the issue of duress during her closing argument. (Doc. 100) at 118-125. Consequently, defense counsel did not alert the Court that she was pursuing that defense. For the above reasons, the Court was not required to *sua sponte* instruct the jury on a duress defense. *See United States v. Malachowski*, 415 F. App'x 307, 313 (2d Cir. 2011) (finding court did not commit plain error by failing to *sua sponte* instruct on affirmative

8

defense when defendant did not mention, if at all, "affirmative defense below," and "did not argue it to the jury" or "actively advance [it] at trial"); *United States v. Chee*, 173 F.3d 864, 1999 WL 261017 *3 n. 2 (10th Cir.) (noting that "evidence of intoxication at trial was insufficient to require the trial court to instruct the jury on the issue sua sponte"); *United States v. McCall*, 85 F.3d 1193,1196 (6th Cir.1996) (holding that failure to give unrequested alibi instruction not "plain error" when court otherwise correctly instructed jury on United States' burden of proof as to every element of crime charged and court gave defendant opportunity to present alibi defense in closing argument). *Cf United States v. Bear*, 439 F.3d 565, 569 (9th Cir. 2006) (finding court committed plain error by failing to instruct *sua sponte* on defense theory when defense theory raised in testimony and closing argument).

Finally, upon reviewing the trial evidence, the Court finds that Defendant's testimony that he believed he continued to serve as a CI after March 14, 2018, is not credible. Defendant acknowledged in his testimony that on March 14, 2018, the Agents told him to stop working until he handled the Apache County situation. Defendant also acknowledged that the Agents told him to "cut ties" with the drug traffickers. The Court, however, does not find Defendant's testimony that Agent Arellano stated that he should, nonetheless, continue to gather information is credible. That testimony contradicts the testimony of both Agents, the written deactivation documents signed by the Agents and their group supervisor, and the Source Chronology Sheet. The lack of credibility of that testimony is further belied by Defendant's subsequent failure to contact the Agents about his March 24, 2018, transportation of methamphetamine from Phoenix to Las Cruces. Moreover, once the Agents deactivated Defendant, Defendant knew that he would be subject to removal proceedings to Mexico. (Doc. 98) at 204, 206, 278-79. Considering what could be an imminent removal, Defendant was motivated to deliver 10 pounds

of methamphetamine for $500 per pound to financially help his family after his removal to Mexico. (Doc. 98) at 280; (Doc. 100) at 37.

Having weighed the evidence and considered the credibility of the witnesses, the Court determines that the guilty verdict is not contrary to the weight of the evidence so that a miscarriage of justice may have occurred. The evidence, in this case, does not preponderate heavily against the guilty verdict. Considering that the Court does not view a motion for new trial with favor and should only grant such a motion with great caution, the Court determines that the interests of judgment do not mandate a new trial. Hence, Defendant's Rule 33(a) motion for new trial lacks merit.

IT IS ORDERED that Defendant's Motion for Judgment of Acquittal or, in the Alternative, for New Trial (Doc. 101) is denied.

_____
UNITED STATES DISTRICT JUDGE